(98 South. 119)

### JEFFERSON ISLAND SALT CO. v. E. J. LONGYEAR CO.   (6 Div. 820.)

(Supreme Court of Alabama.   Nov. 8, 1923.
Rehearing Denied Nov. 29, 1923.)

**1. Corporations ⬅➙662—Implied assent of foreign corporations to be sued in state confined to actions arising within state.**

Compliance by a foreign corporation with Code 1907, § 3642, and designating a place of business and agent residing thereat, was submission to the jurisdiction of the state courts on service of process on the designated agent, but such assent is confined to transactions or causes of action arising in the state.

**2. Constitutional law ⬅➙305—Courts ⬅➙12(4) —Suits maintained under statute in state courts by nonresident against nonresident if service had on defendant.**

Acts 1907 (Sp. Sess.) p. 67, § 1, providing that causes of action arising in foreign states and enforceable there may be enforced in state courts in counties in which jurisdiction of defendant can legally be obtained, when construed with the due process clause of the federal Constitution, means that suits can be maintained in state courts by nonresidents against nonresidents and personal judgments obtained on causes of action arising out of the state if legal service can be had on defendant.

**3. Corporations ⬅➙662—Status of foreign corporation at time of suit against it on foreign cause of action determines validity of service.**

Where a foreign corporation had done business in the state, but its operations had ceased prior to filing of suit and service of process on its statutory agent, who was merely an agent to solicit business, and subsequent to service defendant company secured another contract, validity of service must rest on status at time of suit and not upon conditions existing when cause of action arose, and defendant was not then doing business so as to render it suable as for a personal judgment on a foreign cause of action.

Appeal from Circuit Court, Jefferson County;. Romaine Boyd, Judge.

Action by the Jefferson Island Salt Company against the E. J. Longyear Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Service of summons was had upon Percy G. Cowin, "agent of said company" (defendant).

Defendant filed plea in abatement setting forth that Cowin had, prior to service, been designated as statutory agent of defendant in this state; that both plaintiff and defendant are foreign corporations; that the cause of action did not arise in this state; that the contract made the basis of the suit was made without this state; that defendant was not doing business in this state at the time of filing summons and complaint or service thereof. And it is averred that maintenance of jurisdiction by the courts of this state would deny defendant due process, etc.

Plaintiff joined issue on the pleas in abatement, and trial was had upon the following agreed statement of facts:

Plaintiff and defendant are both foreign corporations, each being incorporated in states other than Alabama. The contract sued on was executed outside the state of Alabama, and the cause of action sued on arose outside the state of Alabama. Said cause of action arose in 1919 and not prior thereto. Service in this case was had on one Cowin on the 10th day of November, 1921, and was the only service had in this case. Cowin's predecessor as statutory agent was first appointed statutory agent of the defendant in 1918, Cowin being appointed defendant's statutory agent in 1920 in the state of Alabama pursuant to the statutes and Constitution of Alabama, and the said appointment of Cowin had not been revoked at the time of the said service.

Activities of defendant in the state of Alabama were these:

Defendant is a mining engineering corporation, its business being to supervise the sinking of shafts in mines. Prior to the filing of this suit defendant had taken and executed in Alabama several such contracts for the sinking of such shafts.

Following is a list of all of such contracts from the beginning of the entrance of defendant into Alabama until the service of summons, giving the names of the other parties to such contracts, together with the dates on which work under such contracts was performed:

(1) Woodward Iron Company, August, 1918, to May, 1919, sinking shaft to iron ore.

(2) Woodward Iron Company, July, 1919, to September, 1919, doing excavation work in shaft.

(3) Woodward Iron Company, October, 1919, to January, 1920, concreting shaft.

---

⬅➙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(Each of the above three contracts has reference to the same shaft.)

(4) Woodward Iron Company (Songo), sinking shaft to iron ore, September, 1919, to January, 1920.

(5) Woodward Iron Company, excavating shaft (Songo shaft mentioned in point 4), January, 1920, to April, 1920.

(6) Woodward Iron Company, concreting shaft (Songo shaft mentioned in point 4), April, 1920, to June, 1920.

(7) Woodward Iron Company, concreting Mulga shaft, November, 1919, to February, 1920.

(8) Sloss-Sheffield Steel & Iron Company, sinking two shafts in coal, March, 1920, to March, 1921.

(9) Pratt Consolidated Coal Company, sinking two shafts in coal, August, 1920, to June, 1921.

No contract was undertaken or work on any contract done from the completion of the Pratt Consolidated job in June, 1921, through the service of summons in November, 1921. Cowin assisted in supervision of the work performed under the foregoing contracts after he was designated defendant's statutory agent in Alabama.

Cowin was the engineer who made the estimates of the qualities and price of the work done for the Sloss-Sheffield Steel & Iron Company on the job begun March, 1920, and ending 1921, above referred to. The last estimate that he made on this work was made in the month of June, 1921. This estimate was submitted to the engineer for said Sloss-Sheffield Steel & Iron Company, who declined to O. K. it. Subsequently Cowin addressed a letter to the engineer of the Sloss-Sheffield Steel & Iron Company written from Minneapolis, Minn., dated August 1, 1921, in regard to this estimate, and subsequently saw such engineer of the Sloss-Sheffield Steel & Iron Company in Birmingham in regard to this estimate. Thereupon said Sloss-Sheffield Steel & Iron Company's engineer O. K.'d such estimate, and thereafter said Sloss-Sheffield Steel & Iron Company paid the amount of said estimate as made by said Cowin; such payment being by check and sent to the defendant at Minneapolis; Minn., by mail by the Sloss-Sheffield Steel & Iron Company.

The manner of obtaining an execution of such contracts was as follows:

Cowin would solicit the business. He would get a proposal from a customer. He would send such proposal to Minneapolis, Minn., the home office of the defendant. Such proposal would be refused or accepted by the general officer of the defendant in Minneapolis. The contract would be signed by the other party to the contract in Alabama, and then signed in behalf of the Longyear Company by its general officer in Minneapolis. The signing by the defendant in Minneapolis always followed the signing by the other contracting party in Alabama. On the face of some of said contracts appear the words, "State of Alabama, Jefferson County." Said Cowin had no authority to close contracts, his authority in this behalf being limited to the solicitation and submission of said proposed contracts to the home office in Minneapolis. If there executed, said Cowin would supervise on behalf of the defendant the sinking of such shaft. The defendant would provide the labor, which would be carried on

210 ALA.—23

the pay roll and paid by the concern for whom the shaft was sunk. When completed, Cowin would not be paid for the work. The payment would be made by the concern for whom the work was done direct to defendant at its home office in Minneapolis. Said Cowin had never prior to the filing of said suit and the service thereof been paid direct for such work. He had no authority to accept such payment. Defendant had no plant in Alabama, no bank account in Alabama, and no office in Alabama other than the statutory office, being the house in which Cowin lived. When actually engaged in the performance of one of these contracts, the concern for whom the work was being done would provide for the use of the defendant while engaged in performing such work an office on the works. Said Cowin was defendant's engineer for the Southern Division, composed of the Southern States, and was paid a salary by defendant. His authority in Alabama was no greater than and no less than his authority in other states, except in so far as his appointment as statutory agent in Alabama may affect his authority in Alabama; said Cowin not being the statutory agent of defendant in any other state. Cowin was not required by defendant to reside in Alabama after finishing the Pratt Consolidated job in June, 1921. The last contract executed for work in Alabama by defendant prior to the filing of this suit was the above contract for the sinking of a shaft for Pratt Consolidated Company in Jefferson county, Ala. Said work was completed in June, 1921. Thereafter all obligations owed by the defendant in Alabama were discharged, and from the time of the completion of the said work in June, 1921, down to and through the time of the filing and the service of said summons, there were no outstanding obligations owed by the defendant in Alabama. The Sloss-Sheffield Steel & Iron Company still owed the defendant a balance for the work performed by defendant for it, mentioned above under point 8, and said Sloss Company mailed direct to defendant at its home office in Minneapolis a check made payable to the defendant for $4,883 on the 23d of November, 1921, in payment of this balance.

During the time from the completion of said Pratt Consolidated job in June, 1921, down to and through the service of said summons, no work was done by defendant in Alabama except as hereinafter stated. The working force which had done the labor on said Pratt Consolidated job was released by defendant and scattered to the various parts of the United States.

During the term under which Cowin was statutory agent of defendant in Alabama he was the only representative of defendant in Alabama.

After the completion of said job the only activities of the said Cowin, except as herein elsewhere stated, were in soliciting further work of the same nature to be performed in Alabama and elsewhere in the Southern Division. During the period in question, that is, from the completion of the Pratt Consolidated job through the service of summons, Cowin made trips to Atlanta, Ga., and to various points in the states of Tennessee and Illinois soliciting work of the nature described, to be performed by the defendant in those states. Two months of the time he spent in Minnesota. During the rest of the time he was in Birmingham, Ala.,

and while there he would, from time to time, solicit work to be performed in Alabama. No such work was performed, and no activities on the part of Cowin, or of any other representative of the defendant, were had in Alabama during the period from June, 1921, through the service of summons, other than such solicitations of business on the part of Cowin, except as herein stated.

Defendant had in Alabama during said period no representative or working force other than the said Cowin. After the service of summons the activities of defendant and of Cowin continued the same as during the period following June, 1921, until December, 1921, when a contract with the Woodward Iron Company, solicited by Cowin, was closed by the general officers of the defendant in Minnesota. The work under said contract was thereafter performed by defendant in Jefferson county, Ala., beginning December, 1921, under the supervision of the said Cowin.

This suit was filed November 10, 1921; said service on said Cowin had November 10, 1921. The working force with which Cowin performed work when he began it was secured by the defendant for him, largely in Minnesota and Michigan, and sent to Alabama. It did not at any time exceed 30 or 35 men. When the job was completed and the men paid off, they were not kept by the defendant, but were allowed to go where they chose.

At all times during Cowin's stay in Alabama defendant would have performed work solicited by Cowin if such solicitation had been successful and the work acceptable to the general officers in Minnesota.

From the time of defendant's entrance into the state in 1918, down to the Pratt Consolidated job, the defendant was constantly performing such contracts in Alabama; there being no intervals between when no work was being done, the contracts at the time overlapping so that the defendant would at times be performing more than one contract at the same time in Alabama; all this during the period ending with the Pratt Consolidated job in June, 1921. Cowin's house was in Birmingham, Jefferson county, Ala., and was the company's statutory office in Alabama from the date of his designation as the defendant's statutory agent in Alabama continuously up to the present time, and said service on Cowin was in Jefferson county, Ala.

Defendant secured a permit to do business in Alabama for the years 1921 and 1922, as required by the laws of Alabama.

The trial court gave the affirmative charge at defendant's request. There was verdict for defendant, and judgment accordingly, from which plaintiff has prosecuted this appeal.

Humphrey, Crawford & Middleton, of Louisville, Ky., and Tillman, Bradley & Baldwin, E. L. All, W. M. Rogers, and A. Key Foster, all of Birmingham, for appellant.

The courts of Alabama have jurisdiction of a cause of action upon a contract arising without the state, and it is immaterial that the plaintiff and defendant are foreign corporations, if the defendant can be found within the state for service of process. Acts Ala. S. S. 1907, p. 67; So. Ry. v. Jordan, 192 Ala. 528, 68 South. 418; note, 85 Am. St. Rep. 922; Barrow S. S. Co. v. Micheal Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964; Penn F. I. Co. v. Gold Issue M. M. Co., 245 U. S. 93, 37 Sup. Ct. 344, 61 L. Ed. 610; note, L. R. A. 1916F, 410; P. & R. Co. v. Kever, 260 Fed. 534, 171 C. C. A. 318. The due process clause is not violated, where it appears the corporation was doing business in the state; and where it has designated a statutory agent and place of business, and engaged in business within the state, its status continues until it abandons business and withdraws. Int. Harvester Co. v. Ky., 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479; St. L. S. W. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Knapp v. Bullock Tractor Co. (D. C.) 242 Fed. 543; Critchfield v. Armour, 228 Ill. App. 28; Groel v. United Elec. Co., 69 N. J. Eq. 397, 60 Atl. 822; Atkinson v. U. S. Operating Co., 129 Minn. 232, 152 N. W. 410, L. R. A. 1916E, 241; Armstrong v. N. Y. C., 129 Minn. 104, 151 N. W. 917, L. R. A. 1916E, 232, Ann. Cas. 1916E, 335; Hill v. Empire State Co. (C. C.) 156 Fed. 797.

Snyder, Gale & Richards, of Minneapolis, Minn., and Percy, Benners & Burr, of Birmingham, for appellee.

In order for courts in this state to have jurisdiction in a suit against a foreign corporation, it is necessary that the corporation should be doing business in the state at the time process is served. It is immaterial that it may have done business prior to, or that it may do business subsequent to, the suit. Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 South. 941, 25 L. R. A. 543; J. I. Case Co. v. McGuire, 201 Ala. 203, 77 South. 729; Chipman, Ltd., v. Jeffrey Co., 251 U. S. 373, 40 Sup. Ct. 172, 64 L. Ed. 314; Robert Mitchell Fur. Co. v. Selden Co., 257 U. S. 213, 42 Sup. Ct. 84, 66 L. Ed. 201. By designation of a statutory agent a foreign corporation becomes subject to suit as a result of service on such agent only on causes of action arising within the state. Old Wayne Ass'n v. McDonough, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345; Simons v. So. Ry., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492; Mo. Pac. v. Clarenden Co., 257 U. S. 533, 42 Sup. Ct. 210, 66 L. Ed. 354.

This cause was submitted under rule 46, and the opinion of the court was delivered by Mr. Chief Justice ANDERSON.

[1] Considerable confusion arose as to when and where foreign corporations could be sued and as to when they did or did not bring themselves within the requirement of section 232 of the Constitution as a condition precedent to doing business in this state. Consequently the Legislature enacted what is now section 3642 of the Code of 1907, first

appearing as section 1316 in the Code of 1896, the same being the codification of an act of 1887, and which is as follows:

"Every corporation not organized under the laws of this state shall, before engaging in or transacting any business in this state, file an instrument of writing, under the seal of the corporation and signed officially by the president and secretary thereof, designating at least one known place of business in this state and an authorized agent or agents residing thereat; and when any such corporation shall abandon or change its place of business as designated in such instrument, or shall substitute another agent or agents for the agent or agents designated in such instrument of writing, such corporation shall file a new instrument of writing as herein provided, before transacting any further business in this state."

This statutory provision was intended to protect the citizens of the state as to causes of action arising within the state and to compel foreign corporations to submit themselves to its jurisdiction as a condition precedent to doing business and to use our courts for the enforcement of its rights and to, in effect, designate the county in which it would be suable and the agent upon whom process could be served. Alabama Western R. R. v. Tally-Bates Co., 162 Ala. 402, 50 South. 341.

When this appellee corporation complied with the foregoing statute, it impliedly submitted itself to the jurisdiction of the courts of this state upon the service of process upon its designated agent and, in effect, admitted doing business in the place designated as essential to the venue of an action against it, and it was therefore suable and subject to the service of process at the place and upon the agent so named upon all causes of action arising in this state until it filed a new declaration of abandonment or change as required by said above-quoted provision. This implied assent, however, is confined to transactions or causes of action arising in this state and not those arising in other states. Simon v. Sou. R. R., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492; Old Wayne Association v. McDonough, 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345; New York R. R. v. Estill, 147 U. S. 591, 13 Sup. Ct. 444, 37 L. Ed. 292.

[2] Prior to the act of 1907, the courts of this state had no jurisdiction to try causes between foreign corporations where the cause of action arose outside of the state. Dozier v. Smith Co., 145 Ala. 317, 39 South. 714, and cases there cited. Hence the Legislature, Special Session 1907, page 67, enacted the following:

"Section 1. Be it enacted by the Legislature of Alabama, that whenever, either by common law or the statutes of another state, a cause of action, either upon contract, or in tort, has arisen in such other state against any person or corporation, such cause of action shall be enforceable in the courts of this state, in any county in which jurisdiction of the defendant can legally be obtained in the same manner in which jurisdiction could have been obtained if the cause of action had arisen in this state."

[3] Why the Legislature desired to burden the courts of this state with settling controversies between outsiders and which arose in other states is difficult to appreciate, but is, of course, a question of legislative policy with which the courts must not be concerned. Said act, however, must be so construed as to make it harmonize with the "due process" clause of the federal Constitution when such can be done without doing violence to the legislative intent, and must therefore be held to mean that suits can be maintained in the courts of this state by nonresidents against nonresidents and personal judgments obtained upon causes of action arising out of this state, if legal service can be had on the defendant. As above stated, the statutory designation by this defendant of its agent and upon whom process could be served applies to causes of action arising in Alabama and not elsewhere and could not apply to the case in hand. Simon v. Sou. R. R., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492. So, the question arises: Was this defendant, at the time the suit was brought, doing business in Jefferson county so as to subject it to personal service under the "due process" clause of the federal Constitution? The agreed facts show that this defendant's agent at the time of service was merely soliciting business, and this alone did not amount to "doing business" as essential to service of process in this case. Green v. C., B. & O. R. R., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; Abraham v. Sou. R. R., 149 Ala. 547, 42 South. 837. While the agreed facts show that this defendant had done business in Jefferson county, its operations ceased in June previous to the service of process upon the statutory agent in November as it had moved from the state all of its force and machinery. It also appears that subsequent to the service it secured another contract, but the validity of the service must rest upon the status at the time the suit was brought, and not upon conditions existing when the cause of action arose. As said by Brickell, C. J., speaking for the court, in the case of Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 South. 941, 25 L. R. A. 543:

"The material changes, which the Constitution works, are, that the corporation becomes liable to suit in any county in which it does business, and the process may be served, compelling it to appear, upon an agent anywhere in the state. The words of the statute are plain and unambiguous. There is no room for construction or interpretation, or for an inquiry into the policy of the provision, or the motives which it may be supposed induced its adoption. It speaks of the present, not of the past, or of the future. The words 'does business' are

equivalent in meaning, and expressive of the same thought, as the words 'doing business.' Unless we deflect these words from their plain and usual signification, or import into the Constitution words not found there, we are constrained to the conclusion that a foreign corporation having a known place of business in the state, is not subject to a personal action, in a county beyond such place of business, unless, at the time of the commencement of suit, it was doing business in such county, and that it is immaterial that the contract was made, or the cause of action arose, on which the suit is founded, at some past time when the corporation was doing business in such county. * * *

"When the suit was commenced, the company had an agent or employee in the possession and care of the line of railroad it had constructed in the county of Conecuh, and of the machine it had used in the loading of cars with timber. The railroad and the machine were mere adjuncts or appurtenances to the sawmill it had operated in the county of Escambia. The operation of the mill had been suspended, and the railroad and machine were unemployed. The care and protection of unused property, or the payment of taxes which are a charge upon the property, and the payment of which is essential to the preservation of the title to the owner, cannot be deemed the exercise of corporate powers or franchises, nor the transaction of the business, or any part thereof, for which the company was created and organized."

We hold that this defendant was not, at the time the suit was brought, transacting or doing business in Jefferson county so as to render it suable as for a personal judgment upon a foreign cause of action, and the trial court did not err in giving the general charge at its request.

While we quote approvingly from the opinion in the Sullivan Case, supra, it must be borne in mind that said case was not dealing with service on a statutory agent under section 3642 of the Code of 1907, upon a cause of action which arose in this state. The date of the cause of action does not appear, and if it arose subsequent to the act of 1887, now section 3642 of the Code of 1907, no reference is made to the same in the opinion, and said opinion can in no wise conflict with what we now say as to the service of process upon a statutory agent in causes of action arising in this state.

In the case of Sou. R. R. v. Jordan, 192 Ala. 528, 68 South. 418, the act of 1907 was applied and enforced, but no point was made as to the validity of the service, and from aught appearing, the defendant did business in Cherokee county and the service was regular; hence there is no conflict between said case and the present holding.

We have considered very carefully the able brief of counsel for the appellant and concede that there are cases persuasive to a holding that a status once established is presumed to continue until the contrary is shown; but we think that the proof shows that this defendant was not doing business in Jefferson county when this suit was brought, within the rule laid down in the Sullivan Case, supra, as an essential to valid service upon a foreign cause of action. As to causes of action arising in this state we agree that the status fixed by a compliance with section 3642 of the Code continues to exist until there is a change or abandonment as there required.

The judgment of the circuit court is affirmed.

Affirmed.

SOMERVILLE, THOMAS, and BOULDIN, JJ., concur.